STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1144


ADRIENNE STELLY

VERSUS

ZURICH AMERICAN INS. CO., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2009-5761
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and J. David Painter, Judges.



**AFFIRMED AS AMENDED IN PART.**



Carl William Robicheaux
StellySkylar J. Comeaux
Pinhook Tower – Suite 603
2014 West Pinhook Road
Lafayette, LA 70508
Telephone:  (337) 235-7888
COUNSEL FOR:
    Defendants/Appellees - Zurich American Ins. Co., D.S. Waters of America, Inc., and John F. Olinger

J. Clemille Simon
P. O. Box 52242
Lafayette, LA 70505
Telephone:  (337) 232-2000
COUNSEL FOR:
    Plaintiff/Appellant – Adrienne Stelly

**THIBODEAUX, Chief Judge.**

The plaintiff, Adrienne Stelly, appeals from a judgment awarding her damages for injuries sustained in a vehicle collision with a commercial truck driver insured by the defendant, Zurich American Insurance Company (Zurich). Following a bench trial, Ms. Stelly was awarded $20,000.00 in general damages and $6,458.00 in special damages. Finding the general damage award abusively low, we increase it to $43,000.00, bringing the total award to $49,458.00. We affirm the denial of damages for future chiropractic care.

I.

## ISSUES

We must decide:

(1)     whether the trial court abused its discretion in awarding general damages; and,

(2)     whether the trial court abused its discretion in failing to award an element of damages for future medical care.

II.

## FACTS AND PROCEDURAL HISTORY

On September 23, 2008, Ms. Stelly's Nissan Altima was rear-ended by a Kentwood Water delivery truck driven by John Ollinger and insured by Zurich. The force of the impact pushed Ms. Stelly's Altima, which was stopped in traffic, into the back of the sports utility vehicle stopped in front of her. Ms. Stelly sustained injuries to her lower neck and low back. Her vehicle could not be driven from the scene.

On the day after the accident, Ms. Stelly was seen by her regular chiropractor, Dr. William Higginbotham, who treated her for the subject accident from September 24, 2008 through January 20, 2011, a total of two years and four

months. He also treated her for six months for a minor accident which occurred just twelve days before the subject accident. Dr. Higginbotham kept different charts on the two accidents, and he kept a third chart on pre-accident aches and pains that he had treated since 2002. For clarity, we will refer to the subject accident as the "Kentwood" accident and to the other accident as the "first" accident. Dr. Higginbotham distinguished all three conditions from each other and was the only person to provide medical testimony. Zurich did not seek an examination of Ms. Stelly by a medical doctor or specialist of its choice.

The trial judge awarded Ms. Stelly all of her medical expenses for Dr. Higginbotham's charges for the Kentwood accident, a total of $6,458.00, for treatments spanning twenty-eight months. He awarded her $20,000.00 in general damages, finding that she suffered only aggravations of pre-existing conditions for seven months. Ms. Stelly appeals the amount of damages awarded, arguing that the trial court erred in not awarding future medical expenses and in awarding abusively low general damages.

III.

**STANDARD OF REVIEW**

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court:

    a.    the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

    b.    the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

2

IV.

**LAW AND DISCUSSION**

*General Damages*

Ms. Stelly contends that the trial court's award of $20,000.00 in general damages was abusively low. We agree. The Louisiana Supreme Court articulated the standard of review for general damage awards in *Duncan v. Kansas City Southern Railway Co.*, 00-66, (La. 10/30/00), 773 So.2d 670, *cert. denied*, 532 U.S. 992, 121 S.Ct. 1651 (2001), as follows:

> General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir. 1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.*, 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn*, 623 So.2d at 1260. As we explained in *Youn*:
>
>> Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.
>
> *Id*. at 1261.
>
> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99-0934 (La.10/29/99),

3

747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La. 1976).

*Duncan*, 773 So.2d at 682-83.

Here, the trial court based its general damage award on an April 21, 2009 release date from Dr. Higginbotham for the Kentwood accident that occurred on September 23, 2008. This would constitute seven months of treatment for the Kentwood accident. However, Ms. Stelly's medical records reveal that Dr. Higginbotham did not release her on April 21, 2009. In fact, on that date he recorded low back and hip pain and spasm with exercise. Dr. Higginbotham did not record "see as needed" until Ms. Stelly's visit dated November 16, 2010.

His records further indicate that Dr. Higginbotham continued to see Ms. Stelly for problems that he attributed to the Kentwood accident through January 20, 2011. This constitutes twenty-eight months of treatment for the subject accident. The trial court awarded Ms. Stelly medical specials of $6,458.00 for *all* twenty-eight months of treatment, which is inconsistent with its general damage award covering only seven months. For these reasons and the reasons below, we reject the defendant's and the trial court's position that all of Ms. Stelly's related injuries were merely short-lived aggravations of pre-existing conditions. Consequently, we increase Ms. Stelly's general damage award to $43,000.00.

Dr. Higginbotham began treating Ms. Stelly in 2002 for TMJ and general maintenance care of her back, which he characterized as "generalized lumbalgia" due to overwork or stress or sitting too long. He testified that prior to the first accident on September 11, 2008, Ms. Stelly had not presented to him with specific localized pain due to a traumatic event. As a result of the first accident, he

4

diagnosed whiplash syndrome, without any radicular symptoms, and an aggravation of the pre-existing TMJ. He released Ms. Stelly from care for the first accident when her upper neck symptoms subsided on February 9, 2009.

On the day following the September 23rd Kentwood accident, Ms. Stelly complained of major low back pain and burning. Dr. Higginbotham diagnosed "lumbosacral sprain/strain" which he differentiated from the pre-accident lumbalgia, stating that lumbosacral sprain/strain is a tearing or pulling of the muscle, with severe burning or irritation to the ligamentous tissue and muscle, usually from an impact.

As a result of the Kentwood accident, he also diagnosed "cervico-brachial syndrome" which involves neurologic symptoms of burning pain radiating into the upper extremities. Dr. Higginbotham distinguished the cervico-brachial injury sustained in the Kentwood accident from the whiplash injury in the first accident, indicating that the whiplash injury affected the upper cervical spine while the cervico-brachial injury affected the lower cervical spine from level C5 through the thoracic level, T1.

Dr. Higginbotham testified that the tearing of the supporting muscles and ligaments of the cervical and lumbar spine created instability issues, spasm, misalignment, and radiating pain which predisposes Ms. Stelly to re-injury. He further testified that the scar tissue formed after the tearing of the muscles is less elastic and also predisposes Ms. Stelly to re-injury. He further opined that the lumbosacral sprain/strain caused Ms. Stelly lower extremity heel and foot pain which has caused issues with her normal gait pattern and walking motion. Ms. Stelly's last visit for the Kentwood accident, according to Dr. Higginbotham's records and testimony, was January 20, 2011.

Accordingly, during the two-and-a-half years following the Kentwood accident, Ms. Stelly saw Dr. Higginbotham at least thirty (30) times for

specifically-related lumbosacral sprain/strain pain and low back treatments, from September 2008 through September 2010. Some of these visits, and a half-dozen additional ones, included treatments for the related cervico-brachial injury with lower cervical and mid-back pain. By November 16, 2010, Dr. Higginbotham noted only headaches, but he gave Ms. Stelly exercises and told her to "return as needed." He specifically testified that she would have exacerbating events that would be related to the Kentwood accident. Ms. Stelly then developed related pain in her right foot, as discussed above, and Dr. Higginbotham treated her several more times for mid-back and foot pain, until January 2011, a total of twenty-eight months.

Ms. Stelly's job is selling printers, and she travels 100 to 300 miles per day. She testified that after the Kentwood accident, her lower back began to burn when she stood waiting for the police to finish the paperwork on the accident. After that time, she worked in pain, had trouble lifting things, driving more than an hour, getting in and out of the car, and seeing clients all day, and she went home early because of the pain. She also testified that she was unable to perform pre-accident household duties and leisure activities that required prolonged standing or sitting, such as cooking, cleaning, washing dishes, mowing the grass, riding her jet ski, bowling, and walking. Ms. Stelly testified that her daughter and fiancé had to do many of the tasks she had done, that it was hard on them, and that she and her fiancé had severed their relationship for several months due to her depression and irritability. Dr. Higginbotham's testimony confirmed that Ms. Stelly was limited by the severe burning pain from her injuries.

Given the nature of Ms. Stelly's injuries from the Kentwood accident and the length of time that she was treated, we find that $43,000.00 is the lowest amount the trial court could have reasonably awarded for general damages. *See Moraus v. Frederick*, 05-429 (La.App. 3 Cir. 11/2/05), 916 So.2d 474 (affirmed

6

$43,000.00 award for past pain and suffering for soft tissue injuries to the arm, shoulder, and neck with seventeen months of conservative treatment); *See also Jacobs v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999 (affirmed $45,000.00 general damage award for soft tissue injuries to neck, back, and shoulder with thirteen months of conservative treatment).

*Future Chiropractic Care*

Ms. Stelly further contends that the trial court disregarded the uncontradicted medical testimony of Dr. Higginbotham regarding future medical care and, therefore, erred in failing to award any sum for that element of damages. She correctly argues that Dr. Higginbotham was of the opinion that Ms. Stelly would have lifelong problems due to the Kentwood accident and would need once-a-month chiropractic care for the remainder of her life at $50.00 to $100.00 each. Ms. Stelly states that her life expectancy at age thirty-six is forty-six more years, for a total of $41,000.00 in future medical expenses.

> When the record establishes that future medical expenses will be *necessary and inevitable*, the court should not reject an award of future medical expenses *on the basis that the record does not provide the exact value of the necessary expenses* . . . .

*Stiles v. K Mart Corp.*, 597 So.2d 1012, 1013 (La.1992) (per curiam) (emphasis added).

Conversely, here, the trial court did not base its denial of future medical care on the basis that the record lacked the exact value of future expenses. Instead, the trial court found that Ms. Stelly's testimony was "inconsistent" and that neither doctor nor patient was able to produce any evidence of the need for continued care directly resulting from the September 23rd accident. The court further noted that Dr. Higginbotham treated Ms. Stelly only with massage,

7

exercise, and spinal adjustments, but no medication for pain or muscle relaxants, and he chose not to refer her to a medical doctor or specialist. Additionally, the court noted no claim for lost wages, or for emotional distress requiring medical treatment; and, it found that Ms. Stelly had returned to her pre-accident status of seeing her chiropractor for "maintenance" and relief for her pre-existing day-to-day back problems.

Much discretion is left to the trial court for the reasonable assessment of whether future medical expenses are necessary and inevitable. See *Dugas v. Derouen*, 01-1397 (La.App. 3 Cir. 7/3/02), 824 So.2d 475, *writ denied*, 02-2131 (La. 11/15/02), 829 So.2d 426 (no abuse of discretion in trial court's denial of future medical expenses). Here, while we have found that the trial court was incorrect in establishing the last related treatment date, the court's other reasoning on future chiropractic care is supported by the record, and we will not overturn the denial of future medical damages.

V.

## CONCLUSION

Based upon the foregoing, the general damage award to Ms. Stelly is increased from $20,000.00 to $43,000.00, and the denial of future medical expenses is affirmed. The cost of this appeal is assessed to Zurich American Insurance Company.

**AFFIRMED AS AMENDED IN PART.**

8