# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 12-1453

LUCIE C. FORD

VERSUS

BITUMINOUS INSURANCE COMPANY,
VITAL OIL WELL SERVICES, LLC,
AND AUDREY E. TATUM

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 239,062, DIV. "F"
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, J. David Painter, James T. Genovese, and John E. Conery, Judges.

Conery, J., concurs in part, dissents in part, and assigns reasons.

**AFFIRMED AS AMENDED.**

**Joseph F. Gaar, Jr.**
**Jason M. Welborn**
**Willard P. Schieffler**
**Lucas S. Colligan**
**Post Office Box 2053**
**Lafayette, Louisiana 70502-2053**
**(337) 233-3185**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Lucie C. Ford**

**Peter F. Caviness**
**Falgoust, Caviness & Bienvenu, L.L.P.**
**505 South Court Street**
**Post Office Box 1450**
**Opelousas, Louisiana 70571**
**(337) 942-5812**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Audrey E. Tatum, Vital Oil Well Services, LLC,**
    **and Bituminous Casualty Corporation**

**GENOVESE, Judge.**

In this personal injury case stemming from an automobile accident, Plaintiff, Lucie C. Ford, appeals the trial court's award of general damages. For the following reasons, we affirm as amended.

## FACTS AND PROCEDURAL HISTORY

On January 7, 2010, a collision occurred in Alexandria, Louisiana, when Ms. Ford, while stopped at a red light, was hit from behind by Audrey E. Tatum. Ms. Ford filed suit against Mr. Tatum, his employer, Vital Oil Well Services, LLC, and its automobile insurer, Bituminous Casualty Corporation,[1] (collectively Mr. Tatum) for the injuries she claimed resulted from the accident. Prior to trial, the parties stipulated that Mr. Tatum, while acting in the course and scope of his employment, was solely at fault in causing the accident. Accordingly, the matter proceeded to trial by jury on the issue of damages only.

The jury returned a verdict awarding Ms. Ford $45,000.00 for past and future medical expenses, $10,000.00 for past and future physical pain and suffering, $2,000.00 for past and future mental pain and suffering, $8,400.00 for past lost wages, $0.00 for future lost wages, and $5,000.00 for loss of enjoyment of life. A judgment was signed in accordance with the jury verdict on September 10, 2012. Ms. Ford appeals.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Ford presents the following assignments of error for our review:

---

[1] Ms. Ford formally named Bituminous Insurance Company as a Defendant; however, its answer reflects the proper name of the insurer to be Bituminous Casualty Corporation.

I.

The jury in this matter abused its discretion in awarding [Ms. Ford] only $10,000.00 for past and future pain and suffering.

II.

The jury in this matter abused its discretion in awarding [Ms. Ford] only $2,000.00 for past and future mental pain and suffering.

III.

The jury in this matter abused its discretion in awarding [Ms. Ford] only $5,000.00 for loss of enjoyment of life.

## LAW AND DISCUSSION

This court, in *Stelly v. Zurich American Insurance Co.*, 11-1144, pp. 3-4 (La.App. 3 Cir. 2/1/12), 83 So.3d 1225, 1228, summarized the standard of review applicable to this case as follows:

> The Louisiana Supreme Court articulated the standard of review for general damage awards in *Duncan v. Kansas City Southern Railway Co.*, 00-66 (La. 10/30/00), 773 So.2d 670, *cert. denied*, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001), as follows:
>
> > General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.*, 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn*, 623 So.2d at 1260. As we explained in *Youn*:
> >
> > > Reasonable persons frequently disagree about the measure of general

2

> damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.

*Id*. at 1261.

> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc*., 341 So.2d 332 (La.1976).

*Duncan*, 773 So.2d at 682-83.

Ms. Ford began treating with Dr. Robert Rush on January 12, 2010 (five days after her accident). Dr. Rush diagnosed her injuries as cervical and lumbar strain, sacroiliac strain, left knee trauma, and post-concussion syndrome with headaches. Her treatment with Dr. Rush continued through May 7, 2010. According to Dr. Rush, on her last visit, Ms. Ford's lower back and hip complaints had resolved, and her neck, sacroiliac strain, and knee were doing well.

On January 20, 2010, Ms. Ford also began treating with Dr. Maurice Gremillion. Dr. Gremillion was of the opinion that "she has some sciatica on the left and multiple musculoskeletal contusions and questionable cerebral concussion" as well as low back pain. An MRI, performed on January 22, 2010, revealed bulging discs at L5-S1. Ms. Ford continued to treat with Dr. Gremillion through April 30, 2010, at which time she still exhibited low back pain. Dr. Gremillion released her to return to work on May 10, 2010. His records reflect that he ordered Ms. Ford additional medication on August 6, 2010, due to

3

continuing complaints of pain. Ms. Ford returned to his office on September 1, 2010, still complaining of lower back pain and related that she was having difficulty walking. In October and November of 2010, Dr. Gremillion again ordered additional pain medication for Ms. Ford. At her last visit on January 28, 2011, Ms. Ford was still complaining of low back pain to Dr. Gremillion.

Ms. Ford underwent physical therapy with Jennifer Watts at Natchez Rehab & Sports Specialists from February 4, 2010, through April 14, 2010. On her last visit, she advised Ms. Watts that she was feeling much better, and she was discharged from therapy.

On December 29, 2010, Ms. Ford went to see Dr. Patrick Juneau. Her primary complaint to Dr. Juneau was "low back pain and some occasional radiating pain down into the left leg." According to Dr. Juneau, "[s]he also had some tenderness over [her] left knee joint." Ms. Ford also related the occurrence of daily headaches, which Dr. Juneau diagnosed as post-concussional headaches resulting from the accident. At Dr. Juneau's recommendation, Ms. Ford received three lumbar epidural steroid injections before returning to see him on May 20, 2011. Due to Ms. Ford's continuing complaints of lumbar pain, Dr. Juneau ordered a diskogram. Based upon the results of the diskogram, Dr. Juneau concluded that Ms. Ford had suffered a myofascial injury to her low back which did not require surgical intervention. On her subsequent visit on October 24, 2011, she had continuing complaints of pain. Because Ms. Ford's lumbar complaints had not resolved by her final visit on July 11, 2012, Dr. Juneau opined that "she had a chronic myofascial injury in the low back."[2] He discharged Ms. Ford on that date.

---

[2] Dr. Juneau explained in his deposition that Dr. Rush's diagnosis of a lumbar strain reached in 2010 is different terminology for the same injury. However, "you really have to play that out over time to confirm that diagnosis." It becomes "chronic" in nature if the symptoms persist "[b]eyond a year."

4

Dr. Juneau referred Ms. Ford to Dr. Malcolm Stubbs for evaluation of her knee pain. She first saw Dr. Stubbs on February 21, 2011. Dr. Stubbs noted fluid on her knee, crepitus,[3] swelling, pain, and tenderness. An MRI of her left knee performed on March 21, 2011, revealed "a small amount of fluid in the knee and some prepatellar bursitis or swelling or edema[.]" Ms. Ford's second and final visit to Dr. Stubbs was April 21, 2011.

Ms. Ford testified about the nature of her injuries and the effect they had on her. With regards to her back, she explained, "[M]y back is just killing me. It – it doesn't hurt every day[,] and it may go a week or two without hurting. But then, when it hurts, it hurts." She testified that when her back is hurting, she is unable to do activities with her children. Additionally, for a period of time, Ms. Ford was traveling nearly two hours to work, then two hours home, which exacerbated her back pain. She testified that she often slept with a TENS unit and that the epidural injections provided limited relief. Ms. Ford also testified that prior to this accident, her mother, who had suffered a stroke and had resultant paralysis, lived with her. Ms. Ford was her caregiver. However, after the accident, because Ms. Ford was unable to take care of her mother, she had to be placed in a retirement home.

Ms. Ford contends that the jury's award of $17,000.00 in general damages was abusively low. We agree. Notably, the jury awarded Ms. Ford the entirety of the medical expenses she incurred, totaling $45,000.00, which included expenses incurred for medical treatment continuing through July 11, 2012. Thus, the jury felt that Ms. Ford was entitled to recover for medical expenses for her treatment totaling approximately thirty months; however, this award for medical expenses is wholly inconsistent with the general damage award.

---

[3] Dr. Stubbs testified that "[c]repitus is a palpable sensation of grinding[.]" He explained that when he places his hand on such a knee he can "feel some crunching or grinding sensation[.]"

Mr. Tatum strenuously argues that the medical records reflect that Ms. Ford's injuries had fully resolved after four months. He states, in brief, "the jury was faced with three (3) separate medical specialists, all of whom testified that the injuries Ms. Ford sustained in the accident were completely resolved, that she was pain free[,] and/or that she was fully capable of returning to work without restriction within four (4) months after the accident." Mr. Tatum also argues that Ms. Ford's credibility, *vel non*, was a significant factor in the result reached. Thus, it is his contention that the amount of the general damages awarded for four months is not an abuse of discretion. However, neither the medical records nor the testimony of Ms. Ford evidence a complete resolution of all of her complaints of pain without recurrence within that time frame. The testimony of Dr. Juneau explains the waxing and waning of pain that can be expected as well as the chronic nature of Ms. Ford's condition, which can only be determined after the passage of time.

Dr. Juneau was questioned as to Mr. Tatum's assertions that Ms. Ford's symptoms had resolved after four months as reflected by Dr. Rush's records and the physical therapy records. In response, Dr. Juneau contrasted the implication that those records indicate that Ms. Ford's symptoms had totally resolved with what Ms. Juneau conveyed to him. Dr. Juneau explained that "she doesn't necessarily have pain all the time." In fact, "it's common to have these fluctuating times of good periods and bad periods." In Dr. Juneau's opinion, "that's what accounts for her -- her chronic -- the chronic nature of her symptoms."

On the issue of Ms. Ford's credibility, we acknowledge that she was not completely forthcoming about her prior complaints. However, the injuries alleged by Ms. Ford to have resulted from the subject accident are fully corroborated by

the medical testimony, and the jury accepted this evidence as establishing the causal connection between the accident and her alleged injuries.

Additionally, this court remains mindful of the standard of review to be employed in this case. Mr. Tatum argues that this case presented two permissible views of the evidence. "On the one hand, the jury could have reasonably concluded that Ms. Ford sustained straining type injuries to her neck, low back[,] and left knee which resolved completely within four (4) months after the accident." Yet, "[o]n the other hand[,] the jury could have concluded (as Ms. Ford argues) that she sustained a '**chronic myofascial back injury**' lasting for a duration of thirty (30) months." Mr. Tatum concludes that "obviously, the jury reached the former conclusion" which mandates an affirmation by this court. We disagree.

Had the jury accepted Mr. Tatum's argument that the necessary medical treatment for Ms. Ford's injuries ended May 7, 2010, i.e., after four months, and, consequently, awarded her medical expenses limited to that time frame, then such a factual determination would have been consistent with the jury's general damage award—but that is not what the jury did. The jury awarded Ms. Ford past and future medical expenses in the amount of $45,000.00, which is considerably more than simply four months of medical treatment and more in line with an approximate thirty-month injury. The jury award of $45,000.00 for past and future medical expenses is wholly inconsistent with, and significantly outweighs, the aggregate $17,000.00 general damage award being appealed. Therefore, we find the general damage award constitutes an abuse of discretion. Thus, we must look to prior awards for the purpose of determining the lowest reasonable award. *See Coco*, 341 So.2d 332.

Based upon the foregoing, and considering the nature and extent of Ms. Ford's injuries, as well as the length of her medical treatment and her

7

complaints continuing to the date of trial, we find that the jury's award of $17,000.00 is abusively low. Considering the facts in this case, and noting the jury's award of $45,000.00 in past and future medical expenses, we find that the lowest amount that could have reasonably been awarded for general damages is $50,000.00. *See Stelly*, 83 So.3d 1225. Accordingly, we hereby amend the aggregate general damage award and increase it from $17,000.00 to $50,000.00.

## DECREE

For the reasons assigned, we affirm the jury's award of general damages to Lucie C. Ford, but we amend same to increase this award from $17,000.00 to $50,000.00. The costs of this appeal are assessed to Audrey E. Tatum, Vital Oil Well Services, LLC, and Bituminous Casualty Corporation.

**AFFIRMED AS AMENDED.**

NUMBER 12-1453

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

LUCIE C. FORD

VERSUS

BITUMINOUS INSURANCE COMPANY, ET AL

**CONERY, J., concurring in part and dissenting in part.**

I agree with the majority that the verdict should be affirmed, but I disagree with increasing the general damages award. The role of an appellate court in reviewing an award of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70.

> [A] jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant's fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict such as the one before us must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a *de novo* review of the record.

*Id*. at 76. The specific facts of each case are ultimately determinative of whether there has been an abuse of discretion. *Id.*

The particular facts of this case are that Plaintiff had an extensive medical history prior to this accident. The record further reflects that she was less than honest with her doctors about several issues, and her credibility was at issue. I believe that there were two reasonable views of the evidence. One view, presented

by Defendants, is that Plaintiff sustained straining type injuries to her neck, low back, and left knee which resolved in 4 months. Another view, presented by Plaintiff, is that she suffered a chronic myofascial back injury lasting for 30 months.

The jury chose to award past and future medical expenses of $45,000 and past lost wages of $8,400.00 (representing four months of lost wages). The general damages award totaled $17,000.00. I do not believe the award of medical expenses is wholly inconsistent with the award for general damages. I disagree with the majority's finding that, "[T]he jury felt that Ms. Ford was entitled to recover for medical expenses for her treatment totaling approximately thirty months[.]" The majority cannot and should not speculate on what the jury *felt*.

There are any number of reasons why a jury might award all of the medical expenses claimed but award a conservative amount for general damages. *Wainwright*, 774 So.2d 70. The fact that the jury awarded $45,000.00 in medical expenses does not *equate* to a finding that the jury believed Plaintiff's injuries necessitated "continuous" medical treatment for thirty months or continued to suffer from injuries sustained in *this* accident as opposed to suffering from pre-existing conditions or some other cause. Counsel for Defendant suggested to the jury that they award all of the medical expenses of $45,000.00 so as not to "penalize" Plaintiff for seeking out different medical opinions and exploring all options. The jury award of all of the medical expenses, therefore, was conceded by defense counsel as part of his trial strategy in order to obtain a more reasonable result on the general damage award, which he succeeded in doing.

The issue of Plaintiff's credibility, or lack thereof, was a serious consideration for the jury. Counsel for Defendant correctly points out in his Supplemental Brief filed on May 13, 2013:

Furthermore, despite Ms. Ford's arguments to the contrary, she did not have "thirty (30) months of active medical treatment". Her medical treatment from the date of the accident until the trial was irregular, at best, as follows:

a)      Ms. Ford treated with Doctors Rush and Gremillion (neither of whom knew of the treatment by the other) from the date of the accident until May 7, 2010. This was a period of four (4) months. She also treated with a physical therapist during this time. The therapist discharged her as pain free on April 14, 2010, and Dr. Rush discharged her as pain free on May 7, 2010;

b)      Ms. Ford next saw a psychologist, Dr. John Jolly, on June 29, 2010, for an evaluation for gastric by-pass surgery. According to Ms. Ford, life was good at that time. There was no mention of the accident;

c)      Ms. Ford next saw Dr. Andrew Hargroder for the gastric by-pass surgery on August 25, 2010.  There was no mention of the accident to Dr. Hargroder then, or at any time before then;

d)      Ms. Ford next saw Dr. Gremillion on September 1, 2010. She told him she had been having low back pain for the past three (3) weeks, but did not attribute it to the accident. Instead, she told him it occurred because she had been driving long distances to work during the past three (3) weeks;

e)      Ms. Ford did not see a doctor again until four (4) months later, when she saw Dr. Patrick Juneau, III. She saw this doctor on December 29, 2010 at the referral of her attorney.  His examination of her was normal, with no objective findings;

f)      Dr. Juneau prescribed a course of three (3) epidural steroid injections, because a prior MRI showed a very minimal disc bulge at the LS-S 1 level. Dr. Juneau testified that this bulge was not related to the accident;

g)      Dr. Juneau next saw Ms. Ford on May 20, 2011, after the injection. He recommended a discogram to check out the disc bulge.  The discogram was, normal. So, Dr. Juneau discharged her in July, 2010. His period of treatment through discharge was about six and one-half (6 ½ ) months;

h) Ms. Ford saw Dr. Stubbs for knee complaints on two (2) occasions during the time she was seeing Dr. Juneau, specifically on February 21, 2011 and April 21, 2011. He ordered a diagnostic test of the knee (an MRI) which showed mild chondromalacia, a pre-existing condition. Ms. Ford never followed up with him;

i) Ms. Ford returned to Dr. Juneau three (3) months later, on October 24, 2011. Dr. Juneau had no notes on that visit;

j) Ms. Ford returned to Dr. Juneau on July 12, 2012, almost nine (9) months after her last visit. Coincidentally, this visit was only twelve (12) days before trial and five (5) days before his trial deposition was taken. No treatment was rendered on that date.

So, as the Court can see, Ms. Ford did not have thirty (30) months of steady, active medical treatment.

The jury, thus, had more than sufficient evidence upon which to properly assess general damages at a conservative amount of $17,000.00. The jury's verdict was not manifestly erroneous and should be affirmed.

For all of these reasons, I dissent from the majority's increase in the general damages award.