618 So.2d 1154 (1993)
Buddy KEETH, et ux., Plaintiffs-Appellants,
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY AND TRANSPORTATION, Defendants-Appellees.
No. 24,720-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
Application Dismissed June 18, 1993.
*1157 Sockrider, Bolin & Anglin by James E. Bolin, Jr., Shreveport, for plaintiffs-appellants.
Richard Ieyoub, Atty. Gen. by S.P. Davis, Shreveport, for defendants-appellees.
Before SEXTON, HIGHTOWER and VICTORY, JJ.
SEXTON, Judge.
Plaintiff, Buddy Keeth, appeals the trial court's judgment rendered in his favor which found him 25 percent at fault and allegedly awarded him inadequate damages for personal injuries he received in an automobile accident caused by the defendants, Louisiana State Trooper James Pepper and the state of Louisiana, through the Department of Public Safety and Corrections. We reverse in part, amend in part, and affirm as amended.

FACTS
On November 20, 1990, at approximately 1:00 p.m., Louisiana State Trooper James Pepper was traveling from Homer to Shreveport on U.S. Highway 79 South. He was flagged down by Jeff Taylor, who wanted to talk to him about a traffic matter. The officer then proceeded to make a U-turn and he parked his car on the shoulder of U.S. Highway 79 North where Taylor was also parked on the shoulder of the road.
Meanwhile, Buddy Keeth was traveling at a speed of 55 miles per hour on U.S. Highway 79 South. As he crested and topped the hill approximately seven miles *1158 south of Homer, Mr. Keeth saw the trooper's car parked on the northbound shoulder of the roadway some 400 to 500 feet away. At that point, U.S. Highway 79 has two southbound lanes and one northbound lane. Mr. Keeth was driving in the inside lane, which is the lane closest to the northbound lane and the lane for ordinary traffic.
When Mr. Keeth was approximately 150 feet away, the state trooper's car suddenly pulled into the northbound lane of traffic and started to make a U-turn. Mr. Keeth immediately applied his brakes, but he was unable to avoid the collision. The accident occurred in the inside southbound lane as Mr. Keeth's vehicle slammed broadside into the passenger side of the state trooper's vehicle.
Officer Pepper testified that before he pulled back onto the road, he glanced in his rearview mirror and saw a northbound 18-wheel truck approximately 500 yards back. Officer Pepper then glanced ahead and saw no traffic approaching in the southbound direction. He looked back into his rearview mirror to check the 18-wheel truck again, and then proceeded out onto the highway and made his U-turn. Officer Pepper first noticed plaintiff's vehicle when he heard the brakes and tires squealing.
Mr. Keeth sustained multiple injuries from the accident. He was hospitalized at Schumpert Medical Center from November 20, 1990, until January 25, 1991, 28 days of which were spent in the intensive care unit. Mr. Keeth was later hospitalized again for surgery to his shoulder. Mr. Keeth has undergone substantial rehabilitation and physical therapy since being released from the hospital.
Mr. Keeth and his wife, Brenda, subsequently filed suit for damages against Officer Pepper and the state of Louisiana, through the Department of Public Safety and Corrections. On June 25, 1992, after a trial on the merits, the trial court found that Officer Pepper was negligent in not making sure the way was clear before commencing his U-turn and that the plaintiff was negligent in not maintaining control of his vehicle in order to stop before the collision or to take evasive action to avoid the collision. Officer Pepper and the state of Louisiana were assessed 75 percent of the fault and plaintiff was assessed the other 25 percent. The trial court awarded the following damages to Buddy Keeth:

1) Past and future medical expenses..........................................$255,000
2) Past and future physical pain, suffering, mental anguish, disability,
 enjoyment of life and disfigurement.....................................$250,000
3) Loss of wages: past and future............................................$225,000

Any other demands by the plaintiff were denied. Brenda Keeth was awarded $5,000 for loss of consortium and $3,200 for loss of earnings. A final judgment was signed on July 10, 1992, and it is from this judgment that plaintiff now appeals.

COMPARATIVE NEGLIGENCE
On appeal, plaintiff contends the trial court erred in assessing him 25 percent fault. Plaintiff contends the sudden emergency doctrine should apply in the instant case, and he should not be faulted for applying his brakes instead of taking another course of conduct to avoid the accident. Defendants assert that Mr. Keeth had the last clear chance to avoid the collision and he failed to take any action other than jamming on his brakes. Defendants also contend that plaintiff failed to mitigate his damages because he was not wearing his shoulder seat belt when the accident occurred. Accordingly, defendants contend that plaintiff should be assessed a higher percentage of fault.[1]
*1159 Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, that standard being that of a reasonable man under like circumstances. Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir. 1986), writs denied, 502 So.2d 114 (La.1987), and 502 So.2d 117 (La.1987). LSA-C.C. Art. 2323 provides that a plaintiff whose negligence contributes to his own injuries for which he seeks damages shall have his claim reduced in proportion to his degree of fault. The determination and apportionment of fault are factual matters, and the trial court's findings in this regard should not be disturbed by a reviewing court unless they are erroneous. Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir.1990).
In assessing comparative fault, the trial court must consider the nature of each party's conduct and the extent of the causal relationship between the conduct and the damages claimed. Relevant factors concerning the nature of each party's conduct include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985).
The record evidence in the instant case reveals that on November 20, 1990, Buddy Keeth was traveling at 55 miles per hour in his proper lane of travel on U.S. Highway 79 South. As he crested the hill approximately seven miles south of Homer, Mr. Keeth noticed two vehicles parked on the opposite shoulder of the road approximately 500 feet away. When Mr. Keeth was approximately 150 feet away from the vehicles, the state trooper's vehicle, without warning and unexpectedly, started to make a U-turn and block plaintiff's lane of traffic. Mr. Keeth immediately applied his brakes, but he was unable to avoid hitting the state trooper's vehicle.
Under the doctrine of sudden emergency, a motorist without sufficient time to weigh all the circumstances and whose actions did not contribute to the emergency cannot be assessed with negligence if a subsequent review of the facts discloses he may have adopted a safer, more prudent, course of conduct to avoid an impending accident. Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972); Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3rd Cir.1990), writ denied, 565 So.2d 450 (La.1990). Elements of a sudden emergency include a position of imminent peril; insufficient time to consider the circumstances and weigh alternatives; and the situation is not created by the driver's own negligence. Ketchens v. Jones, 533 So.2d 127 (La.App. 4th Cir.1988).
We find the sudden emergency doctrine applicable in the instant case. It is apparent that Buddy Keeth found himself in a position of imminent peril when the state trooper's vehicle suddenly started to make a U-turn when plaintiff was only 150 feet away. At 55 miles per hour, Mr. Keeth was traveling at a rate of 81 feet per second and therefore had less than two seconds to react once the state trooper turned into his lane. Although Mr. Keeth may have adopted a more prudent course of conduct to avoid the accident, such as swerving his vehicle to the right or left, it is clear that Mr. Keeth did not have sufficient time to consider these alternative courses of action. Mr. Keeth acted in a reasonable and prudent manner to avoid the collision by applying his brakes. This emergency situation was created entirely by the negligence of Officer Pepper. Therefore, the finding by the trial court that Buddy Keeth was at fault was clearly erroneous. We would also note that the failure to wear a seat belt should not be considered evidence of comparative negligence. LSA-R.S. 32:295.1 E. Accordingly, the judgment of the trial court finding plaintiff 25 percent at fault will be reversed, *1160 and the defendants will be cast with 100 percent fault for the accident.

GENERAL DAMAGES
In the next assignment of error, plaintiff contends the trial court erred by awarding inadequate damages. Plaintiff contends that his general damage award was below discretion in view of his devastating injuries. Defendants allege the trial court awarded an excessive sum for damages since all of the plaintiff's injuries have healed.[2]
General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitively measured in monetary terms. Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1135 (La.1991).
The assessment of monetary damages is discretionary with the trial court, and a judgment cannot be disturbed by a reviewing court absent a clear showing of abuse of discretion. The determination of whether the trial court abused its discretion in assessing damages must be based upon the peculiar facts of each case and with due regard for the fact that the trial court is in the best position to evaluate the credibility of the witnesses, including their testimony about the nature and extent of their injuries. It is only after an articulated analysis of the facts and circumstances peculiar to the case and the individual that a reviewing court may determine that an award is inadequate or excessive. Lloyd v. TG & Y Stores Company, 556 So.2d 629 (La.App. 2d Cir.1990).
The question for the appellate court is not whether a different award may have been more appropriate, but rather whether the trial court's award can be reasonably supported by the record. In testing whether the trial court abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. The appellate court must first reach a determination that the trial court abused its discretion before resort to prior awards is appropriate for purposes of determining what would then be an appropriate award. Red v. Taravella, 530 So.2d 1186 (La.App. 2d Cir.1988).
In assessing the plaintiff's award for general damages, we have considered the following factors. Through the testimony of Drs. Lloyd Whitley, Edward Anglin, and Eric Bicknell, plaintiff proved that he sustained the following injuries from the accident:
1) A fractured socket of the left hip;
2) A badly fractured right knee;
3) A fractured left shoulder;
4) Adhesive capsulitis in the right shoulder from extended immobility during overall treatment;
5) Facial lacerations;
6) Various abrasions and contusions;
7) Aggravation of existing neuropathy (a nerve disease which plaintiff suffered as a result of his diabetes).
Immediately following the accident, plaintiff was obviously in substantial pain. He was hospitalized from November 20, 1990, until January 25, 1991, 28 days of which were spent in the intensive care unit. Dr. Anglin performed surgery on plaintiff's right shoulder in August 1991 to correct the adhesive capsulitis caused by plaintiff's lengthy hospital stay. Dr. Anglin also testified that plaintiff will suffer severe arthritis in his left hip and right knee because of injuries received from the accident. Dr. Bicknell testified that the accident aggravated plaintiff's peripheral neuropathy condition and that plaintiff would now experience stiffness in his right hand.
Dr. Anglin and Dr. Bicknell also testified that plaintiff will have certain limitations in the future because of injuries received from the accident. Plaintiff will have difficulty getting in and out of vehicles or sitting in a vehicle for any length of time. *1161 Plaintiff will also have difficulty climbing stairs, standing on his feet for any significant period of time, and writing.
Plaintiff testified that since the accident, he has been forced to abandon certain hobbies, such as riding horses and hunting. Plaintiff testified that he cannot play with his grandchildren like he used to. Plaintiff also stated that he is not physically able to travel long distances or attend church regularly.
In applying the standard of review noted above and having considered all the particular facts and circumstances in this case, we conclude that the general damage award of $250,000, while perhaps low, is not an abuse of discretion. This award is affirmed.

PAST AND FUTURE MEDICAL EXPENSES
Plaintiff contends that the trial court's award for past and future medical expenses was inadequate. Plaintiff asserts that Dr. Anglin's testimony indicates that plaintiff will need hip replacement surgery, knee replacement surgery, and right shoulder surgery in the future. Plaintiff points out that Dr. Bicknell testified that plaintiff would need future nerve conduction studies along with physical therapy. Plaintiff also contends he should be reimbursed for future medication expenses and future travel expenses. Therefore, plaintiff contends he is entitled to approximately $83,000 in future medical expenses.
Defendants contend that plaintiff should not have received anything for future medical care. Defendants contend the doctors' testimony about plaintiff's future medical expenses is unreliable speculation without any objective medical findings. Therefore, defendants contend plaintiff is not entitled to an award for such alleged damages.
An award for future medical expenses is in great measure highly speculative and not susceptible of calculation with mathematical certainty. However, like any other element of damages, future medical expenses must be established with some degree of certainty. Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable costs. Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La.App. 2d Cir.1988).
In the instant case, the trial court awarded plaintiff damages of $255,000 for past and future medical expenses. Exhibit P-21, which was entered into evidence without objection, sets forth plaintiff's medical expenses prior to trial. These expenses totaled $187,983.78. Although the trial court failed to detail its calculations, it appears that it awarded plaintiff approximately $67,000 for future medical expenses.
Our review of the record establishes the probability that plaintiff will need future medical care and was therefore entitled to an award for future medical expenses. Dr. Anglin testified that plaintiff would develop severe arthritis in his left hip and right knee. Because of this fact, Dr. Anglin stated it was more probable than not that plaintiff would need knee replacement surgery and hip replacement surgery in the future. Dr. Anglin also testified there was a greater than 50 percent chance that plaintiff would need additional surgery on his right shoulder. Dr. Bicknell testified that it was more likely than not that plaintiff would need several more nerve conduction studies along with periods of physical therapy.
As to the expense for each of these future medical procedures, each doctor suggested a possible cost range for each procedure. Ms. Glenda Dessommes, a legal nurse consultant, also testified regarding the average expected hospital, anesthesia, physical therapy, and medication expenses that plaintiff would encounter for his future medical procedures. After evaluating all of the factors in this record relating to the future medical expenses, we find the trial court's award of $67,000 for future medical expenses is within the lower range of estimated costs for these procedures and was not an abuse of the trial court's discretion. *1162 This assignment of error has no merit.

LOSS OF EARNINGS
Plaintiff contends that his $225,000 award for loss of earnings, past and future, was less than half of that projected by the undisputed testimony of Dr. Melvin Harju, an expert in finance, economics, and valuation of economic loss. Plaintiff asserts that the very lowest figure the trial court could have awarded was $400,000. Defendants allege that plaintiff should not have received an award for future wages since there was no showing of permanent disability. Defendants contend that Dr. Harju's report is not valid since it did not consider plaintiff's actual income as reflected in his tax returns for the years 1988, 1989, and 1990. Defendants also contend that the financial information provided by the plaintiff's expert was highly speculative and unrealistic.
Awards for loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the courts must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which work an injustice on neither party. Anderson v. Bennett Wood Fabricators, supra.
The factors to be considered in determining loss of future income include the plaintiff's physical condition before and after his injury; his past work record and the consistency thereof; the amount the plaintiff probably would have earned absent the injury complained of; and the probability he would have continued to earn wages over the balance of his working life. A loss of future income award is not predicated upon the difference between the plaintiff's earnings before and after a disabling injury. Such an award is predicated, more strictly considered, upon the difference between the plaintiff's earning capacity before and after a disabling injury. Anderson v. Bennett Wood Fabricators, supra.
In computing loss of future income, it is first necessary to determine whether and for how long a plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of his injury. It is also necessary to ascertain whether he has been disabled from work for which he is fitted by training and experience. Hunt v. Board of Supervisors of Louisiana State University, supra.
A review of the record indicates the injuries plaintiff received from the accident will prevent him from returning to work as a district manager for American Family Life Assurance Company (AFLAC). Dr. Richard H. Galloway, an expert in vocational disability and limitations, testified that plaintiff would not be able to engage in any substantial, gainful activity after the accident. Plaintiff also testified that he could not return to work. As previously mentioned, plaintiff has difficulty getting into and out of vehicles and he is unable to sit for any length of time. This, of course, prevents him from traveling to see clients. Plaintiff is also unable to write for any appreciable length of time, thus he is unable to fill out sales reports.
Plaintiff had been employed at AFLAC for six months and had been a district manager for only five days prior to the accident. In order to establish his projected loss of income, plaintiff presented the testimony of Alfred Kyle and Dr. Melvin Harju. Mr. Kyle, regional sales coordinator for AFLAC, used his 11 years experience with the company to project what plaintiff's income might have been for two years as a district manager. These projections were based upon the commissions plaintiff would make from his own personal production along with commissions he would receive from sales made by agents under his authority. Dr. Harju's calculations simply carried forward Mr. Kyle's projections for plaintiff's expected work life and provided for no productivity increases. Dr. Harju projected future lost earnings totalling $532,764.
Mr. Kyle testified that plaintiff's actual sales record was not reflected in the income *1163 projections which he made. Rather, these income projections were based on what he thought plaintiff was capable of selling. Mr. Kyle's projections of sales of $2,000 per week by plaintiff was, of course, speculative as plaintiff had only served as AFLAC district manager for a brief period. Plaintiff's actual income in the three years prior to the accident, as reflected by his income tax returns, was substantially lower than that projected for him as a district manager for AFLAC. Neither Mr. Kyle nor Dr. Harju considered plaintiff's previous income history as a car salesman or an insurance salesman when making their projections.
At the time of the accident, plaintiff had a life work expectancy of 8.5 years. Although plaintiff's income the prior three years was low, plaintiff had increased his earning capacity by going to work for AFLAC as a district manager. It is difficult to calculate plaintiff's projected loss of earnings, since he had only been employed in his new position as a district manager for five days. When all factors are considered, we find no abuse of discretion in the trial court's award of $225,000 for future loss of wages.

MRS. KEETH'S DAMAGES
Plaintiff contends the trial court's monetary award to Brenda Keeth, plaintiff's wife, was inadequate. Through the testimony of Brenda Keeth and her work supervisor, Mr. Scott, plaintiff contends that Mrs. Keeth should have been awarded $4,692.25 for missing work to be with her husband instead of the $3,200.00 awarded by the trial court. Plaintiff also asserts the trial court should have awarded Mrs. Keeth more than $5,000.00 for her loss of consortium claim.
One may recover loss of earnings for attending to an injured spouse. Mays v. American Indemnity Company, 365 So.2d 279 (La.App. 2d Cir.1978), writ denied, 367 So.2d 392 (La.1979). Also, see Nichols v. Hodges, 385 So.2d 298 (La.App. 1st Cir.1980), writ denied, 386 So.2d 355 (La.1980). In the instant case, plaintiff clearly proved through the testimony of her supervisor, Mr. Scott, that Mrs. Keeth took five sick days and a four-month leave of absence in order to care for her seriously injured husband. Accordingly, we find the trial court erred in awarding $3,200.00 for Mrs. Keeth's loss of wages, when she showed a loss of $4,692.25. We will amend to so reflect.
A claim for loss of consortium is broken down into several components including loss of: (1) love and affection, (2) society and companionship, (3) sexual relations, (4) the right of performance of material services, (5) the right of support from her husband, (6) aid and assistance, and (7) loss of felicity. Proof of any of these elements is sufficient for an award for loss of consortium. Finley v. Bass, supra.
Mrs. Keeth testified that she visited the hospital every day after the accident and observed her husband in substantial pain. During this period, Mrs. Keeth obviously could not experience the same kind of love, companionship, affection, society, and comfort to which she was accustomed. Mrs. Keeth testified she had to fix her husband's meals, help him bathe, and help him dress for several months after he was released from the hospital. She testified that she and her husband were unable to have sexual relations for three months after the accident. Mrs. Keeth also stated that her sexual relationship with her husband has been significantly diminished since his accident. This fact was corroborated by the testimony of the plaintiff. Mr. Keeth was also unable to support his wife since he cannot return to work. Finally, Mrs. Keeth testified that her husband is unable to ride horses, attend church, or play with his grandchildren like he used to.
A judge or jury has much discretion in assessing damages in cases of offenses and quasi-offenses. LSA-C.C. Art. 2324.1. After finding that the lower court abused its discretion, the appellate court may raise (or lower) an award of damages to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); *1164 Clark v. Ark-La-Tex Auction, Inc., 593 So.2d 870 (La.App. 2d Cir.1992), writ denied, 596 So.2d 210 (La.1992).
Based upon the foregoing, we conclude the trial court abused its discretion in awarding only $5,000.00 to Mrs. Keeth for loss of consortium. It is clear from the record that Mrs. Keeth's life-style was severely affected following the accident and she suffered a significant loss of love, companionship, affection, and sexual relations. A review of the jurisprudence, Thomas v. Petrolane Gas Service Ltd. Partnership, 588 So.2d 711 (La.App. 2d Cir.1991); Peterson v. Western World Insurance Company, 536 So.2d 639 (La.App. 1st Cir.1988), writ denied, 541 So.2d 858 (La.1989); Jaffarzad v. Jones Truck Lines, Inc., supra, leads us to believe that the lowest loss of consortium award appropriate under the circumstances of this case is $8,500.00. Accordingly, the trial court's award to Mrs. Keeth will be amended to reflect $8,500.00 for loss of consortium.

DECREE
For the reasons assigned, the judgment of the trial court holding plaintiff 25 percent at fault is reversed and the defendants are recast with 100 percent fault. The trial court's awards to Mr. Keeth for general damages, past and future medical expenses, and loss of wages are affirmed. The trial court's award to Mrs. Keeth is amended to award her $13,192.25. All costs in this cause are assessed to the state insofar as the law allows, as may be determined by dollar amount hereinafter by the trial court. LSA-R.S. 13:5112.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.
NOTES
[1] We are unable to consider these contentions of the defendant as the defendant did not appeal and did not answer the appeal. LSA-C.C.P. Art. 2133. Further, the result obviates defendant's position.
[2] See the previous footnote.