DREW, J.
|, These are three consolidated suits arising from an unusual intersectional motor vehicle accident in rural Franklin Parish.
This appeal stems from the grant of summary judgment dismissing certain claims against one party.[1]
La. Highways 128 and 4 run very roughly east and west. Highway 128 travels northwest from St. Joseph to this intersection, while Highway 4 runs southwest from Newellton to the inter section, at which point the two roads actually join and continue to the west.[2]
A quick glance at a map of North Louisiana shows the intersection to be a fork with two tines pointing eastward.[3] Immediately before the intersection, however, Highway 128 bends due north, forming a T with Highway 4, which runs east and west at that precise point. The intersection is controlled by a stop sign requiring drivers on Highway 128 to yield to drivers on Highway 4.[4]
MOVEMENT OF THE VEHICLES
On August 13, 2009, three vehicles were involved in this single-car accident, though they did not strike each other:
¡,* Glen Gossett, accompanied by his wife, Melissa, was west of the intersection, driving east in his blue truck on the combined La. Highways 4 and 28, heading from Winnsboro toward Newellton;
• a few car lengths behind Gossett, Lola J. Coleman[5] was also driving her brown truck east on the combined highways, with two guest passengers, Vincent Coleman [6] and Damion Bennett;[7] and
*365 • proceeding north on Highway 128 toward the intersection was a 2009 white Hummer HU3 driven by Stephanie Stephens.
MOTION FOR SUMMARY JUDGMENT
Coleman and Illinois National Insurance Company, in their capacities as defendants, filed a motion for summary judgment asserting that:
• Stephens ran the stop sign and drove directly into Coleman’s path on Highway 4, creating a sudden emergency;
• Coleman swerved to avoid a head-on collision and flipped her vehicle, injuring herself and her occupants;
• Coleman was not negligent in any way and thus could not be liable to her two guest passengers for their injuries suffered in the accident;
• Coleman was traveling east when Stephens suddenly ran the stop sign and drove into her path in the eastbound lane of Highway 4; and
• consequently, Coleman was not responsible for the accident.
SUDDEN EMERGENCY
Our law provides guides for analyzing situations where a person is faced with a sudden emergency. Our jurisprudence reveals that:
[;• if an involved motorist has exercised ordinary care (or the highest degree of care required by law) but nevertheless causes injury, the accident is said to be inevitable and no liability attaches;
• a person confronted with imminent peril lacks sufficient time to carefully consider and weigh all circumstances;
• a person faced with a sudden emergency bears no liability unless her negligence brought on the emergency; and
• when faced with a sudden emergency, a person must choose a reasonable option, even if hindsight shows that a better course of action may have existed.[8]
DEPOSITION TESTIMONY
Coleman contends her choices were to hit the Stephens vehicle head-on or attempt to avoid a collision by pulling onto the right shoulder or ditch. In a split-second decision, she chose the latter course of action.
Gossett testified that he saw Stephens approaching the intersection and could tell that she was not going to stop. He drove to the left and into a ditch on the northwest side of Highway 4. He stated that he did so because Stephens had entered his lane of travel and was about to “T-bone” him. When he returned to the roadway, he was stunned that Stephens had not hit him. He saw in his rear view mirror that Coleman’s vehicle was airborne.
Gossett’s wife testified in basic conformity with her husband.
The investigating state trooper, Nicholas Gee:
• confirmed that Gossett said he swerved to avoid the Stephens vehicle, which did not stop at the stop sign and came into his lane of travel;
• cited Stephens for running the stop sign;
• noted that only Stephens alleged that she stopped at the stop sign;
[• noted that Stephens said she saw no stop sign, though she still stopped, as she was unfamiliar with the intersection;
*366 • noted that Stephens said she saw the Coleman truck slowing and signaling an imminent turn to the right onto Highway-128; and
• noted that Stephens thought she could safely pull out, which she did, on her way to Winnsboro, at which time she noticed the Coleman truck losing control, leaving the roadway and flipping.
Stephens contends there is a genuine issue of material fact as to whether she blocked the intersection, making summary judgment inappropriate. She also alleges that this is a case of comparative negligence and a fair disposition requires assessing credibility and weighing evidence at trial, not by summary judgment.
TRIAL COURT RULING
The trial court found that:
• the sudden emergency was caused by the entry of the Stephens vehicle[9] onto Highway 4, rendering the accident unavoidable;
• nothing reflects that Coleman was speeding or inattentive;
• Coleman did not have reasonable time to react to the imminent peril caused by the Stephens vehicle entering Highway 4;
• the opponents of the motion for summary judgment offered no evidence to show Coleman had sufficient time to consider and weigh all circumstances and choose the best way to avoid the imminent danger caused by Stephens;
• Coleman testified that she had to swerve right to avoid a head-on collision;
• nothing indicated that Coleman’s evasive action was negligent;
• Coleman faced a sudden emergency and chose to steer onto the shoulder to avoid the collision with the Stephens vehicle; and
• there was no possible finding of liability against Coleman.
| ¡¡The trial court granted judgment to Ms. Coleman and her insurer, certifying the judgment as final, with no just reason to delay an appeal.
ARGUMENTS OF THE STEPHENS DEFENDANTS
Stephens urges that many genuine issues of material fact exist as to whether her vehicle actually impeded the travel lane of Coleman, arguing:
• she knew the intersection was tricky, though she seldom drove there;
• she intended to take a left onto Highway 4, heading to Winnsboro;
• upon seeing the Gossett blue truck, she came to a “slightly abrupt” complete stop, which may have startled the driver of the truck;
• on stopping, she saw the Coleman vehicle’s right turn signal indicating an impending turn to the south onto Highway 128;
• since Coleman was turning, she moved forward into the intersection;
• she told the trooper that she fully stopped, at which point the first vehicle passed, and only then did she pull onto Highway 4, at which point the second vehicle passed, swerved, over corrected, and flipped;
• both Coleman and her passenger admitted that they saw the Stephens vehicle only when it was right in front of them; and
• the trial court inappropriately weighed testimony and made a credibility finding against her in order to grant summary judgment.
The Stephens defendants urge that the trial court improperly applied the burden *367 of proof on the issue of “sudden emergency,” inappropriately shifting the burden of proof to Stephens to avoid summary judgment.[10]
ARGUMENTS OF LOLA J. COLEMAN AND ILLINOIS NATIONAL INSURANCE COMPANY
Coleman and her insurer moved for summary judgment, urging that:
k* She and her occupants gave consistent testimony that a sudden emergency was caused by Stephens driving into Coleman’s lane of travel on Highway 4, resulting in Coleman swerving to the right;
• she was not speeding[11] and the Hummer was squarely in her lane;
• the burden of proof was not on her, as their summary judgment motion was filed against her in her capacity as a defendant;
• she, in her capacity as a plaintiff, has a separate attorney;
• she filed this motion for summary judgment as a defendant, which requires those making claims against her to bear the burden of proof;
• there is no legal basis for the argument that Coleman’s dual capacity imposes upon her a greater burden of proof;
• the doctrine of sudden emergency is not an affirmative defense and does not increase her burden of proof;[12]
• the actions of Stephens in failing to stop or in abruptly stopping caused Gossett to swerve left in order to avoid being struck by Stephens; and
• summary judgment was properly granted [13] as there was no dispute as to a material fact and Stephens clearly created a sudden emergency.
Stephens replies that summary judgment is inappropriate here because to reach this decision, the trial court would have to totally reject her version of the facts, which could occur only by assessing witness credibility and weighing evidence, which is properly a trial function.
IvStephens argues that Coleman was at least comparatively negligent, pointing out these genuine issues of material fact, inter alia:
• whether or not Coleman was driving in a safe and prudent manner, as evidence showed she was speeding;
• whether Stephens improperly pulled into Coleman’s lane of travel;
*368 • whether or not Stephens came to a full stop; and
• whether the stop sign was in place before the wreck.
OUR ANALYSIS
While we very much appreciate the thorough efforts of the trial court, we find, in our de novo review, that the plethora of intertwined issues extant here preponderates that summary judgment is improper. To reach the finding that it did, the trial court would have had to totally reject the deposition testimony of Stephens. This would necessarily require credibility assessments at this level of the litigation, which we have expressly refused to approve. Debrun v. Tumbleweeds Gymnastics, Inc., 39,499 (La.App.2d Cir.4/6/05), 900 So.2d 253.
Also troubling in this context is that granting of summary judgment in favor of one party in these consolidated cases would arguably be res judicata, potentially adversely disposing of the rights of other parties in other capacities in these lawsuits.
This matter needs to be litigated, with the trier of fact having all issues, all parties, and all witnesses before it. At that point, weighing evidence and assessing credibility will be appropriate and necessary.[14]
|8We accordingly reverse the grant of summary judgment, at the cost of Ms. Coleman and her insurer, and remand for further proceedings.
DECREE
The summary judgment is REVERSED at the cost of its proponents and REMANDED for further proceedings.

. Lola J. Coleman and her insurer, Illinois National Insurance Company, were granted summary judgment as to her guest passengers.

. A few miles further west of the intersection, the two roads split again, with Highway 4 leading northwest to Winnsboro, and Highway 128 leading southwest to Gilbert.

. Put another way: driving northwest on Highway 128 from St. Joseph to the intersection in question, a traveler’s route would be along the southern tine of the fork. A motorist driving southwest on Highway 4 from Newellton would form the northern tine of the fork.

. One disputed fact is whether the stop sign was actually in place immediately before the accident.

. In Franklin Parish suit # 41,579-C, Lola J. Coleman sued Stephanie P. Stephens, Stephens Fish, Inc., and their insurer. This appeal is indexed in our court as # 48,993-CA.

. Vincent Coleman was a minor on the day of the wreck. In Franklin Parish suit # 41,582-A, his parents sued on his behalf Stephanie P. Stephens, Stephens Fish, Inc., Lola J. Coleman, and their insurers. This appeal is indexed in our court as # 48,995-CA.

. Damion Bennett was a minor at the time of the accident. In Franklin Parish suit #41,-583-B, his mother filed suit on his behalf against Stephanie P. Stephens, Lola J. Coleman, and their insurers. This appeal is indexed in our court as # 48,994-CA.

. See Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318; Keeth v. State Through Dept. of Public Safety & Transp., 618 So.2d 1154 (La.App. 2d Cir.1993); and Dupree v. Sayes, 42,792 (La.App.2d Cir.12/5/07), 974 So.2d 22.

. The Hummer was owned by Stephens Fish, Inc., and driven by Stephanie Stephens.

. For three reasons, defendants claim the trial court improperly applied the burden of proof. First, there was no "sudden emergency.” Second, Coleman was a plaintiff in one suit and a defendant in two of the three consolidated cases. Third, Coleman failed to show the absence of factual support for one or more elements of the claims made by her adverse parties.

. Stephens argues that since Gossett admitted he was driving around 60 mph, and Coleman agreed that she had been following Gossett for some time, then it follows that Coleman was speeding in this 55 mph speed zone. Gossett’s wife admitted in her deposition that her husband was speeding. Coleman claims to have been driving only 45 mph before the wreck.

. Coleman urges that the sudden emergency doctrine is simply an element of the law of negligence which must be considered when determining the negligence of a party.

. Coleman argues that Stephens' claim that she stopped at the stop sign is immaterial because the evidence established she entered Highway 4 before it was safe to do so. In other words, Coleman posits that Stephens caused the accident by failing to yield to oncoming traffic with the right of way. Any remaining questions of fact which may exist are immaterial to the resolution of this dispute, in Coleman’s view.

. We find that at least these issues should be resolved at trial:
(1) Did Stephens come to a full stop and was the stop sign standing?
• Gossett said that Stephens never hit her brakes:
• the nose of her Hummer never dipped;
• Stephens said that she completely stopped, even drough the stop sign was not up;
• Gossett said the stop sign was up until he saw Coleman's vehicle roll over it;
• Stephens said she and her father saw dead grass under the felled stop sign; and
• Trooper Gee said that the stop sign had been up, judging from debris at the scene.
(2) Did Stephens cause the accident?
• Trooper Gee said that even if the stop sign had been down, Stephens should not have pulled onto Highway 4 until she made certain that the roadway was clear;
• Gossett said that Stephens was looking down before the wreck, using a cell phone;
• One of Coleman's passengers agreed, alleging that Stephens "never saw us”; and
• Stephens denied looking down or using any electrical apparatus before the wreck.
(3)Do the other parties have comparative fault?
• Gossett’s wife said that Stephens was already out in their lane of Highway 4, about half a car length, before her husband swerved to the left to avoid a collision;
• Two young men at the scene reported that Gossett's vehicle caused the accident;
• One of Coleman’s guest passengers initially said that Coleman was on Highway 128 at the time of the accident, a statement later retracted;
• Coleman denied turning onto Highway 128, saying she had to swerve to the right off Highway 4, so as to avoid a head-on collision with the Stephens vehicle; and
• Stephens said Coleman's right blinker was on, and Coleman admitted that she intended to turn right onto Highway 128.