Christopher C. Colley, David Cannella, Jeremiah S. Boling, BARON & BUDD, P.C., 2600 CitiPlace Drive, Suite 400, Baton Rouge, LA 70810, COUNSEL FOR PLAINTIFF/APPELLANT
Kevin J. LaVie, Robert John Barbier, Meredith W. Blanque, PHELPS DUNBAR LLP, 365 Canal Street, Suite 2000, New Orleans, LA 70130-6534, Gus David Oppermann, V, Charles Douglas Wheat, WHEAT OPPERMANN PLLC, 848 Heights Blvd., Houston, TX 77007, COUNSEL FOR DEFENDANT/APPELLEE
(Court composed of Judge Roland L. Belsome, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins )
Judge Regina Bartholomew-Woods *520 Jerry Craft ("Mr. Craft"), appeals the jury's award of $ 1,600,000.00 in general damages and the judgment notwithstanding the verdict ("JNOV") granted by the trial court in favor of Crowley Marine Services, Inc.'s (formerly known as Delta Steamship Lines, Inc.) and James J. Flanagan Shipping Corporation's (formerly known as New Orleans Stevedore), collectively hereinafter referred to as "Appellees", which struck the jury's award of $ 1,000,000.00 in future medical expenses. Appellees also appeal the trial court's judgment denying its JNOV motion as to the jury's finding of negligence. For the reasons that follow, we affirm, in part, and reverse, in part, the judgment rendered by the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
On May 26, 2017, at eighty-two (82) years old, Mr. Craft was diagnosed with malignant mesothelioma, a rare cancer caused by exposure to asbestos. Mr. Craft filed the instant personal injury lawsuit against his former employers asserting that he contracted the disease while working as a longshoreman on the New Orleans Riverfront from 1953 until his retirement in 1989. As a longshoreman[1] , Mr. Craft worked for several stevedore companies, including Appellees. The record reflects that some of the stevedore companies from which Mr. Craft worked settled out of court, were dismissed from the litigation, or did not appear in the litigation. Appellees, however, pursued litigation and the matter was tried before a jury.
At trial, Mr. Craft sought to prove that he was exposed to asbestos-containing products while employed by Appellees and that such exposure was the legal cause for his development of mesothelioma. Mr. Craft, Mrs. Clemmie Craft ("Mr. Craft's wife"), and Ms. Jermaine Craft ("Mr. Craft's daughter") testified at trial as to the severity of Mr. Craft's mesothelioma. Also, videotaped depositions of Mr. Kenneth Morris ("Mr. Morris"), Mr. Moses Powell ("Mr. Powell"), Mr. Clarence Wren ("Mr. Wren"), Mr. Larry Dillon ("Mr. Dillon"), and Mr. Monroe Wayne May ("Mr. May"), (collectively hereinafter referred to as "Co-workers"), were presented at trial. These men testified that they were longshoreman during Mr. Craft's tenure. Additionally, expert witnesses, Dr. Emily Cassidy ("Dr. Cassidy"), Dr. Eugene Mark ("Dr. Mark"), Dr. Willaim E. Longo ("Dr. Longo"), and Professor Gerald Markowitz ("Professor Markowitz"), a historian, testified at trial. Lastly, Tom Flanagan ("Mr.
*521 Flanagan"), the president of James Flanagan Shipping Company, also testified.
At the conclusion of the trial, the jury was given a special verdict form, which was composed of eight (8) interrogatories related to Appellees' liability. In summary, the jury found, by a preponderance of evidence, that Mr. Craft was exposed to asbestos while employed by Appellees, that this exposure was a substantial contributing factor to Mr. Craft's development of mesothelioma, and that Appellees were negligent by not providing safeguards against such exposure during Mr. Craft's employment. The jury also awarded Mr. Craft the following: $ 1,000,000.00 for past & future physical pain and suffering; $ 250,000.00 for past & future medical pain and suffering; $ 250,000 for past & future physical disability; $ 100,000.00 for past & future loss of enjoyment of life; $ 360,000.00 for past medical expenses; and $ 1,000,000.00 for future medical expenses. The jury's award totaled $ 2,960,000.00. After considering the jury's verdict, the trial court rendered its judgment in favor of Mr. Craft. After a reduction for settled parties totaling $ 1,973,333.32, the trial court awarded Mr. Craft $ 986,666.68 plus judicial interest from the date of filing of the initial petition until the amount is paid by the Appellees.
Appellees, in response to this judgment, filed two JNOV motions. The trial court denied Appellees' JNOV motion as to the jury's negligence finding, but granted the Appellees' JNOV motion as to the jury's award for future medical expenses in the amount of $ 1,000,000.00. It is from this judgment that Appellees and Mr. Craft appeal.
DISCUSSION
General Damages
Mr. Craft asserts the jury abused its discretion in awarding him only $ 1,600.000.00 in general damages. We disagree.
There is no question that the abuse of discretion standard of review applies when an appellate court examines a factfinder's award of general damages. Gaunt v. Progressive Security Insurance Company , 2011-1094, p. 30 (La.App. 4 Cir. 6/8/12), 92 So.3d 1250, 1270 (citing Wainwright v. Fontenot , 2000-0492, p.6 (La. 10/17/00), 774 So.2d 70, 74 ). In Gaunt, this Court, relying on the Louisiana Supreme Court, stated:
The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." Youn v. Maritime Overseas Corp. , 623 So.2d 1257, 1260 (La.1993). Moreover, before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. (Emphasis added.)
Id. (citing Coco v. Winston Indus., Inc. , 341 So.2d 332, 334 (La. 1977) ).
General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of *522 life or life-style which cannot be definitely measured in monetary terms." Duncan v. Kansas City So. Ry. Co. , 00-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682 (quoting Keeth v. Dept. of Pub. Safety & Transp. , 618 So.2d 1154, 1160 (La.App. 2 Cir.1993) ). Vast discretion is accorded the trier of fact in fixing general damage awards. Id. (citing La. C.C. art. 2324.1 ; Hollenbeck v. Oceaneering Int., Inc. , 96-0377, p. 13 (La.App. 1 Cir. 11/8/96), 685 So.2d 163, 172 ).
In the case presently, Mr. Craft argues the jury's award is grossly inadequate to compensate him for his pain and suffering and loss of enjoyment of life since his diagnosis. Mr. Craft testified that he enjoyed traveling with his wife, singing in the church choir, and performing lawn work at his home, activities he argues he can no longer enjoy because of mesothelioma. Mr. Craft's wife and Mr. Craft's daughter similarly testified that this disease has significantly impacted his enjoyment of life. Mr. Craft also testified that he has undergone invasive surgeries and other painful procedures to fight this disease.
While we acknowledge Mr. Craft has substantially suffered since his diagnosis, we do not find the jury abused its discretion. The jury awarded Mr. Craft $ 1,600,000.00 in general damages, which included $ 1,000,000.00 in past and future physical pain and suffering; $ 250,000.00 in past and future mental pain and suffering; $ 250,000.00 in past and future physical disability; $ 100,000.00 in past and future loss of enjoyment of life; and $ 360,000.00 in past medical expenses. The record indicates that Mr. Craft's medical bills at the time of trial totaled about $ 360,000.00. The record also supports that Mr. Craft has undergone several procedures and has continually received chemotherapy treatments since his diagnosis. In Louisiana, it is a well-established rule that, "[b]efore a Court of Appeal can disturb an award made by a [fact finder], the record must clearly reveal that the trier of fact abused its discretion in making its award. Scarberry v. Entergy Corp. , 2013-0214, p. 30 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 213-14. The jury, as the fact finder in this matter, allocated amounts it deemed appropriate for damages. (See Rando v. Anco Insulations Inc. , 2008-1163 (La. 5/22/09), 16 So.3d 1065 ; Egan v. Kaiser Aluminum & Chemical Corp. , 94-1939 (La. App. 4 cir. 5/22/96), 677 So.2d 1027 ).
Thus, we do not find that the jury abused its discretion when it awarded Mr. Craft $ 1,6000,000.00 in general damages and decline to disturb the jury's award.
JNOV
Appellees and Mr. Craft respectively contest the trial court's judgments on the JNOV motions filed by Appellees in this matter. Appellees argue that the trial court erred in denying its JNOV motion as it relates to the jury's negligence finding. Mr. Craft argues that the trial court improperly granted Appellees' JNOV motion as it relates to the jury's award of future medical expenses.
The Louisiana Supreme Court, in Davis v. Wal-Mart Stores, Inc. , set forth the appropriate standard of review for a Court of Appeal when reviewing a JNOV as follows:
The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review.
2000-0445, p. 5 (La. 11/28/00), 774 So.2d 84, 89 (citing Anderson v. New Orleans Public Service, Inc. , 583 So.2d at 832 ).
*523 When reviewing the trial court's findings of fact for manifest error, the issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Warner v. Collins , 2012-0773, p. 4 (La. App. 4 Cir. 12/12/12), 106 So.3d 693, 696 (citing In re Succession of Sporl , 2004-1373 (La. App. 4 Cir. 4/6/05), 900 So.2d 1054 ).
La. C.C.P. art. 1811 is the controlling article for the use of JNOV.[2] While this article does not articulate the grounds upon which a JNOV can be granted, the Louisiana Supreme Court has established such criteria. Anderson v. New Orleans Public Service Inc. , 583 So.2d 829 (La. 1991). In Anderson , the Louisiana Supreme Court stated:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. (Emphasis added).
Anderson, 583 So.2d at 832.
We will first address Mr. Craft's assertion that the trial court erred in granting Appellees JNOV motion as it relates to the jury's award of future medical expenses. Then, we will address Appellees' arguments as it relates to the trial court's denial of its JNOV motion to the jury's negligence finding.
Future Medical Expenses
Mr. Craft argues that the trial court erred in granting Appellees' JNOV motion. In particular, Mr. Craft argues that medical experts testified that mesothelioma is an incurable cancer and will require him to receive chemotherapy treatments for the rest of his life.
Conversely, Appellees argue that the trial court properly granted the JNOV motion because Mr. Craft provided no evidence, such as testimony regarding the medical costs, frequency, or type of future medical treatment required, that supported the jury's award for future medical expenses. Appellees also argue the trial court improperly allowed the issue to be presented to the jury because of lack of evidence. We disagree.
In Gaunt , this Court stated that the "proper standard for the trial court's determination of whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary." 2011-1094, p. 34, 92 So.3d at 1272. Further, this Court articulated that:
Future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred. Although a *524 plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record. If a fact finder can determine from past medical expenses or other evidence a minimal amount that reasonable minds could agree upon, then an award is proper. (Emphasis added.)
Id. (citing Molony v. USAA Prop. & Cas. Ins. Co. , 97-1836 (La.App. 4 Cir. 3/4/98), 708 So.2d 1220 ).
In the instant case, the jury heard testimony from medical experts, Dr. Cassidy and Dr. Mark. Both medical experts testified as to the severity of Mr. Craft's mesothelioma. When deposed, Dr. Cassidy, Mr. Craft's diagnosing physician, testified that Mr. Craft has an aggressive biphasic cell type that requires palliative care.[3] Dr. Cassidy testified that palliative care is not treatment that serves to eradicate the disease, but is meant to keep the patient comfortable. Dr. Cassidy further testified that Mr. Craft will need on-going chemotherapy treatment until he passes away from the disease.[4]
Dr. Mark, the pathologist who tested stains from Mr. Craft's pleural biopsy,[5] echoed the assertion that Mr. Craft will need on-going treatment. When deposed, Dr. Mark explained that Mr. Craft has been diagnosed with diffuse malignant mesothelioma, an aggressive tumor which is strictly caused by exposure to asbestos. He further explained that, due to the risks of surgery, the only treatment for Mr. Craft is chemotherapy and radiotherapy, which he will need on an ongoing basis. He also explained that chemotherapy and radiotherapy are not cures because there is no cure for mesothelioma ; however, this treatment plan is utilized as an aide to provide some comfort to a patient.
Further, as noted above, Mr. Craft provided his medical expense summary totaling about $ 360,000.00. The medical expense summary detailed his treatments and procedures. He also testified that he had received between ten (10) to fifteen (15) chemotherapy treatments since his diagnosis and that his doctors advised that the treatments serve to help prolong his life. Based on these facts and pursuant to the standard articulated in Gaunt , we find that Mr. Craft proved, by a preponderance of evidence, that future medical expenses would be medically necessary. 2011-1094, p. 34, 92 So.3d at 1272.
Thus, we find that the jury correctly awarded Mr. Craft future medical damages, and that the trial court committed manifest error in granting Appellees' JNOV motion. Thus, we reverse the trial court's JNOV motion pertaining to that part of the verdict, and reinstate the jury's verdict in the amount of $ 1,000,000.00.
*525 Negligence
On the issue of negligence, Appellees argue the trial court erred in denying its motion for JNOV. Appellees collectively argue that Mr. Craft presented insufficient evidence to establish that a legal duty was owed to him.
The Louisiana Supreme Court, in Rando v. Anco Insulations, Inc. , addressed the issue of negligence in an asbestos related case. 2008-1163 (La. 5/22/09), 16 So.3d 1065. In Rando , the plaintiff, a former pipe fitter, filed a lawsuit against his former employers asserting that he contracted mesothelioma from occupational exposure to asbestos. The trial court entered a judgment in favor of plaintiff, awarding a total of $ 2,800,000.00 in general damages. Both the First Circuit and the Louisiana Supreme Court affirmed the trial court. The defendants averred that the trial court erred in its liability finding because the plaintiff did not provide sufficient evidence to support such a finding. After employing the duty-risk analysis to make the liability determination, the Louisiana Supreme Court disagreed finding that the evidence supported the lower court's determinations that the defendants knew or should have known of dangers of asbestos at time of plaintiff's employment and found that the scope of defendants' duty extended to the plaintiff.
Similarly, here, the jury found that Mr. Craft was exposed to asbestos while employed by Appellees, that this exposure was a substantial contributing factor to Mr. Craft's development of mesothelioma, and that both Appellees were negligent by not providing safeguards against such exposure during Mr. Craft's employment. However, to contest this finding and buttress their liability argument, Appellees raise distinct arguments. To properly address each argument, we will refer to Appellees individually as Appellee-Flanagan and Appellee-Crowley for this part of the discussion only.
First, Appellee-Flanagan argues that there was no evidence or testimony presented at trial establishing that it knew or should have known of the effects of asbestos in the 1950s and 1970s; thus, asserting that Mr. Craft failed to establish a duty for stevedore companies in the 1960s and 1970s regarding handling asbestos. We find this argument fails.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. There is almost a universal duty on the part of the defendant in a negligence action to use reasonable care to avoid injury to another. Rando , 2008-1163, p. 27, 16 So.3d at 1086. In the realm of an employer/employee relationship, La. R.S. § 23:13 states, in pertinent part, that:
Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.
The Louisiana Supreme Court, in Rando , articulated that to establish whether an employer has a duty to protect an employee from exposure to asbestos depends on whether the employer knew or should have known of the dangers of asbestos exposure at the time of the employee's employment. Rando , 2008-1163, p. 29, 16 So.3d at 1087.
*526 Here, Mr. Flanagan testified that the company's policies complied with all pertinent Louisiana laws, including the Louisiana Worker's Compensation Act, which included a provision for occupational diseases and identified asbestosis as a compensable disease in 1952.[6] However, he averred that the company only imported cargo and coffee during Mr. Craft's tenure; thus, asserting that Mr. Craft did not come into contact with asbestos-containing products. However, when questioned as to the corporate documents to corroborate this assertion at trial, Mr. Flanagan testified that these records were damaged in a storm. He vehemently contended, however, that this assertion is based on the information shared by his father and Mr. Craft's deposition in another asbestos case.[7] Notably, Mr. Flanagan acknowledged he was made aware of the effects of asbestos in the late 1960s and 1970s by his father.
Moreover, the jury heard testimony from Mr. Dillon, who testified that he worked regularly for New Orleans Stevedore[8] during his tenure as a longshoreman.[9] Mr. Dillon explained that he would unload and load different types of cargo, including large sacks containing "white powder", which he identified as asbestos. He explained that he was frequently exposed to high amounts of dust and likely unloaded sacks of white powder while employed by New Orleans Stevedore.[10] "An appellate court on review must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. [W]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings..." Menard v. Lafayette Ins., Co. , 2009-1869, p. 15 (La. 3/16/10), 31 So.3d 996, 1007-8.
Appellee-Crowley makes similar contentions specifically asserting that during Mr. Craft's tenure with the company from 1953 until 1969, there is no evidence that it knew or should have known of the effects of asbestos. It argues that Mr. Craft did not provide any testimony that it violated any government regulations or industry standards, or that it did not act as a prudent stevedore. This argument also fails.
Contrary to Appellee-Crowley's assertions, Professor Markowitz, who was qualified as an expert in the field of history with a subspecialty in occupational health, public health, and environmental health, testified that that there were articles published in the early 20th century that addressed *527 the dangers of asbestos, and by 1930 it was established that asbestos could cause disease or death to individuals who inhaled asbestos fibers. He testified that digests, such as the National Safety News published by the National Safety Council,[11] released articles, as early as 1931, addressing the dangers of asbestos. He stated that these articles are housed in the library at the National Safety Council's headquarters, which is open to the public. His research also revealed that Delta Steamship Lines, Inc. ("Delta")[12] maintained a membership with the National Safety Council Marine Section throughout the 1940s until 1960s, and a former president of Delta was an executive officer of the National Safety Council Marine Section from 1953 until 1955.
Based on these facts, we do not find that Appellees can affirmatively assert that neither did not know of the dangers of asbestos while Mr. Craft was in their respective employ.
Second, Appellees assert that the trial court erred in not excluding the testimony of Professor Markowitz. Each avers that Professor Markowitz, a historian, was not a qualified industry expert and did not testify as to what either knew or should have known regarding the dangers of asbestos. They contend that Professor Markowitz's testimony only confused and misled the jury.
A trial court has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible, and its judgment with respect to such matters will not be disturbed on appeal unless manifestly erroneous. Oddo v. Asbestos Corp. Ltd. , 2014-0004, pp. 24-25 (La. App. 4 Cir. 8/20/15), 173 So.3d 1192, 1210. Here, Appellees filed a motion to exclude the testimony of Professor Markowitz, which the trial court denied. We find that the trial court properly conducted a Daubert hearing and did not commit manifest error by allowing the testimony of Professor Markowitz at trial.
Further, the record before this Court evidences that Mr. Craft was employed by Appellee-Flanagan from 1960 until 1988 and Appellee-Crowley from 1953 until 1969. During his career, Mr. Craft testified that he worked as a cargo handler and winch operator and either handled or worked in close proximity to other longshoreman who handled asbestos-containing products. He described how some of the burlap sacks would rip open and a "blue" substance would be released into the area.[13] He also stated that he constantly inhaled dust from the cargo, and none of the stevedore companies ever warned him of the dangers of asbestos exposure or took steps to prevent or reduce such exposure. "Every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." Oddo , 2014-0004, p. 24, 173 So.3d at 1209-10. Further, Mr. Craft's co-workers collectively testified that they *528 were constantly exposed to asbestos products that they unloaded from the ships. All stated that they were provided masks to place over their mouths when handling this cargo; however, they contended that the masks provided to them were not sufficient and did not prevent the inhalation of the dust. They further affirmed that the stevedore companies did not provide any warnings against dangers of asbestos.
Moreover, Dr. Longo, who was qualified as a material science expert, opined that Mr. Craft's work as a longshoreman, along with his testimony, demonstrated that he was exposed to asbestos. He asserted that Mr. Craft's most prominent exposure was due to his handling of burlap bags that contained asbestos, which he opined was crocidolite, a blue fiber asbestos, based on Mr. Craft's testimony regarding "blue" substance escaping out of the burlap sacks he handled. He contended Mr. Craft's extended work days and hours exposed him to higher levels of asbestos. Also, Dr. Cassidy and Dr. Mark attributed Mr. Craft's asbestos exposure to his work as a longshoreman and opined that this exposure substantially increased his risk of developing mesothelioma. Both doctors also attributed this exposure as the medical cause for Mr. Craft's malignant mesothelioma.
A review of the totality of the evidence supports the jury's negligence finding. "If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse..." Oddo , 2014-0004, p. 30, 173 So.3d at 1212 (citing Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989) ).
Accordingly, we find no manifest error in the trial court's denial of Appellees' JNOV motion and decline to disturb this finding.
CONCLUSION
For the foregoing reasons, we reverse the trial court's granting of Appellees JNOV motion as it relates to the jury's award of $ 1,000,000.00 for future medical expenses and reinstate the jury's award. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED, IN PART, AND REVERSED, IN PART

Mr. Craft explained that, as a longshoreman, he would load and unload cargo from the ships that docked at the Port of New Orleans.

La.C.C.P. art. 1811 pertinently states:
Not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.

Dr. Cassidy testified that Mr. Craft has an aggressive biphasic cell type called sarcomatoid cells. She testified that patients with these types of cells require more aggressive treatment.

Dr. Cassidy testified that a surgical operation called extrapleural pneumonectomy is available to patients with mesothelioma. However, she explained this surgery is very rare and there are strict factors-such as age, the extent to which the disease has spread, and recovery risks-that surgeons consider in making eligibility determinations. She further explained that due to the severity of Mr. Craft's disease, his age, and other mitigating factors, this surgery was not a treatment option for him.

Dr. Cassidy explained that the pleura is the inner lining of the chest wall where mesothelioma develops. A biopsy of this area is performed if there are concerns that plaque or nodularity in that area is malignant. The materials retrieved from this procedure are sent to a pathologist for evaluation.

Asbestosis and mesothelioma both share asbestos as a causative agent. Rando , 2008-1163, p. 29, 16 So.3d at 1087.

The record reflects that Mr. Craft provided a deposition in 2006, in which he testified that he did not recall handling asbestos products for any employers at the Port of New Orleans. During the trial for this matter, however, Mr. Craft testified that he made those assertions in 2006, because he was unsure whether he handled asbestos products. He explained that no one ever explained to him the type of products he handled.

It should be noted, again, that New Orleans Stevedore was purchased by James J. Flanagan Shipping Corporation. However, at the time of Mr. Dillon and Mr. Craft's employment, the company was known as New Orleans Stevedore.

Mr. Dillon worked as a longshoreman at the Port of New Orleans from 1974 until his retirement in 2004.

Mr. Dillon testified that he could not recall whether he unloaded or loaded sacks of white powder while employed by Appellee-Flanagan; however, based the extent of his dust exposure, he surmised that he did unload and load sacks of white powder at some point while in their employ.

Professor Markowitz testified that the National Safety Council was started in 1912 and served to provide members with information to protect their employees.

It should be noted, again, that Delta Steamship Lines, Inc., was purchased by Crowley Marine Services, Inc. However, at the time of Mr. Craft's employment, the company was known as Delta Steamship Lines, Inc.

Dr. Longo testified that this blue substance Mr. Craft described was likely crocidolite, which is one of the three types of asbestos used in all asbestos products. Dr. Cassidy testified that crocidolite is a blue fiber and is exponentially more carcinogenic than other asbestos fiber types.